IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KLEIN-BECKER usa, LLC, a Utah limited Liability Company, and KLEIN-BECKER IP HOLDINGS, LLC, a Nevada limited liability Company, BREMENN RESEARCH LABS, LLC, a Utah limited liability company, BREMENN IP HOLDINGS, LLC, a Nevada limited liability company, SOVAGE DERMATOLOGICAL LABORATORIES, LLC, a Utah limited liability company, SOVAGE DERMATOLOGICAL IP HOLDINGS, LLC, a Nevada limited liability company, and BASIC RESEARCH, LLC, a Utah limited liability company,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>TARIK S. TAHINI a/k/a ERIC MORELLO, RABIAH S. TAHINI a/k/a SARAH TAHINI d/b/a TAKK8, KELLY M. FORD, KIMBERLY SCHRAMM TAHINI, SUHILE TAHINI, STEVE SCHRAMM, VIRGINIA SCHRAMM and JOHN DOE CORPORATIONS I-X,<br><br>　　　　Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR EMERGENCY RELIEF, TEMPORARY RESTRAINING ORDER, AND MOTION FOR PRELIMINARY INJUNCTION<br><br><br>Case No. 2:07-cv-00521 DB |

I. PROCEDURAL BACKGROUND

This matter is before the Court on Klein-Becker usa, LLC, Klein-Becker IP Holdings, LLC, Bremenn Research Labs, LLC, Bremenn IP Holdings, LLC, Sovage Dermatological Laboratories, LLC, Sovage Dermatological IP Holdings, LLC, and Basic Research, LLC (collectively, "Plaintiffs"), Motion for Emergency Relief, Temporary Restraining Order, and Preliminary Injunction.

Plaintiffs' Second Amended Complaint contains claims for trademark infringement, copyright infringement, false advertising and unfair competition under the Lanham Act, RICO violations, false advertising in violation of the Utah Truth in Advertising Act, unfair competition in violation of the Utah Unfair Competition Act, and intentional interference with existing and prospective business relations.  Plaintiffs' claims against Defendants Tarik S. Tahini a/k/a Eric Morello, Rabiah S. Tahini a/k/a Sarah Tahini d/b/a TAKK8, Kelly Ford, Kimberley Schramm Tahini, Suhile Tahini, Virginia Schramm, Steve Schramm, and John Doe Corporations ("Defendants") arise out of Defendants' alleged sale of counterfeit versions of goods marketed and distributed by the Plaintiffs.

## II. FINDINGS OF FACT

[Proposed] Memorandum Decision And Order Granting Plaintiffs' Motion For Emergency Relief,
Temporary Restraining Order, And Preliminary Injunction

Page **2** of **9**

Plaintiffs produce and sell proprietary topical cosmetic products under the federally registered trademarks StriVectin®, StriVectin–SD®, Idebenol®, and Hylexin®. Each of Plaintiffs' StriVectin, StriVectin–SD, Idebenol, and Hylexin cosmetic products are sold in copyrighted packaging that bears Plaintiffs' distinctive trade dress. The trademarks StriVectin, StriVectin–SD, Idebenol, and Hylexin are coined words, chosen by Plaintiffs as their trademarks due to their uniqueness and high degree of distinctiveness.

The StriVectin–SD trademark was first used in interstate commerce in August 2002 and was registered in the United States Patent and Trademark Office on September 2, 2003 under Registration No. 2,760,414. The trademark StriVectin was duly registered for cosmetics in the United States Patent and Trademark Office on November 21, 2006 under Registration No. 3,175,013. These registrations are valid, subsisting, and in full force and effect. Registration Nos. 2,760,414 and 3,175,013 are *prima facie* evidence of the validity and ownership thereof and are constructive notice of ownership of the marks StriVectin-SD and StriVectin, respectively.

Plaintiff Klein-Becker I.P. Holdings, LLC has granted an exclusive license to use the trademarks StriVectin and StriVectin-SD to Plaintiff Klein-Becker usa, LLC.

The Idebenol® trademark was adopted for use in interstate commerce on August 31, 2005. It was registered in the United States Patent and Trademark Office on October 10, 2006 as Registration No. 3,153,020. This registration is valid, subsisting and in full force and effect. Registration No. 3,153,020 is *prima facie* evidence of the validity and ownership thereof and is constructive notice of ownership of the mark Idebenol.

[Proposed] Memorandum Decision And Order Granting Plaintiffs' Motion For Emergency Relief, Temporary Restraining Order, And Preliminary Injunction

Page **3** of **9**

Plaintiff Sovage Dermatological IP Holdings, LLC has granted an exclusive license to use the trademark Idebenol to Plaintiff Sovage Dermatological Laboratories, LLC.

The Hylexin® trademark was adopted for use in interstate commerce on March 22, 2005. It was registered in the United States Patent and Trademark Office on September 5, 2006 as Registration No. 3,140,334. This registration is valid, subsisting, and in full force and effect. Registration No. 3,140,334 is *prima facie* evidence of the validity and ownership thereof and is constructive notice of ownership of the mark Hylexin.

Bremenn also is a licensee of the U.S. copyright registration of the Hylexin® products packaging. The U.S. Copyright for Hylexin® was registered with the U.S. Copyright Office on March 3, 2005, Registration No. VA 1-317-012. The U.S. Copyright for the Hylexin® insert was registered with the U.S. Copyright Office on September 13, 2006, Registration No. TX 6-437-517.

Plaintiff Bremenn IP Holdings, LLC has granted an exclusive license to use the trademark Hylexin to Plaintiff Bremenn Research Labs, LLC.

Plaintiffs provide a money-back guarantee for every product. Customers who purchase counterfeit StriVectin, StriVectin–SD, Idebenol, and/or Hylexin branded products could return such products to Plaintiffs or an authorized reseller and expect a full refund from Plaintiffs.

The record evidence supports Plaintiffs contention that the StriVectin, StriVectin–SD, Idebenol, and Hylexin cosmetics being sold by Defendants are counterfeit products. The laboratory tests performed and physical inconsistencies between Defendants' counterfeit products and Plaintiffs' genuine products confirm that Defendants are selling cosmetic creams that are significantly different from authentic StriVectin, StriVectin–SD, Idebenol, and Hylexin products. Defendants' products further lack other elements of authenticity. These differences

[Proposed] Memorandum Decision And Order Granting Plaintiffs' Motion For Emergency Relief, Temporary Restraining Order, And Preliminary Injunction

Page **4** of **9**

include colors on the product packaging and product tubes, font used on the packaging, font used on the bar codes, product tube caps, advertising brochure inserts, lot numbers, and expiration dates used for the lot numbers.

The record demonstrates that the Plaintiffs have purchased counterfeit StriVectin Eye Cream, StriVectin–SD, Idebenol, and/or Hylexin from the Defendants directly or from third-party resellers whose ultimate source were Defendants, on multiple occasions.  In addition, Defendant Suhile Tahini was arrested on July 23, 2008, in Thailand, for possession of counterfeit imitations of Plaintiffs' products StriVectin-SD, StriVectin Eye Cream, and Hylexin.

### III. DISCUSSION

The Court has jurisdiction pursuant to 28 U.S.C. § 1338(a) and (b), and 15 U.S.C. § 1121.  Venue lies pursuant to 28 U.S.C. § 1391.

#### A.  THE PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

The Motion for Emergency Relief, Temporary Restraining Order, and Preliminary Injunction involves an injunction under 15 U.S.C. § 1116(a). The Tenth Circuit recently explained:

> Under the Lanham Act, a court may grant an injunction "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). A party seeking injunctive relief must establish four factors:
>
> > (1) it will suffer irreparable harm if the injunction is not granted, (2) its threatened injury outweighs the harm caused to the opposing party as a result of the injunction, (3) the injunction is not adverse to the public interest, and (4) it has a substantial likelihood of success on the merits of the case.

See Fed. Lands Legal Consortium ex rel. Robart Estate v. United States, 195 F.3d 1190, 1194 (10th Cir. 1999)Country **Kids 'N City Slicks, Inc. v. Sheen,** 77 F.3d 1280, 1283 (10th Cir.

[Proposed] Memorandum Decision And Order Granting Plaintiffs' Motion For Emergency Relief, Temporary Restraining Order, And Preliminary Injunction

Page **5** of **9**

1996); Autoskill v. Nat'l Educ. Support Sys., 994 F.2d 1476, 1487 (10th Cir. 1993); Kansas Health Care Assoc. v. Kansas Dept. of Social & Rehab. Serv., 31 F.3d 1536, 1542-43 (10th Cir. 1994); Longstreth v. Maynard, 961 F.2d 895, 902 (10th Cir. 1992); Shelbyco, Inc. v. Western Trimming Corp., 43 USPQ2d 1140, 1142 (D. Utah 1997).

The Court finds that Plaintiffs have shown that they are entitled to preliminary injunctive relief.

First, the Plaintiffs have shown that they will suffer irreparable harm if the preliminary injunction is not granted.  The Defendants have sold very convincing counterfeit versions of Plaintiffs' goods.  Consumers are likely to be confused by the Defendants' counterfeits, and believe that they are purchasing genuine StriVectin Eye Cream, StriVectin-SD, Hylexin, and Idebenol.  The Plaintiffs are likely to lose sales to the Defendants.  And, given Plaintiffs money back guarantee, consumers may seek refunds for the counterfeit goods that Plaintiffs did not produce.  Further, the Defendants goods are of unknown quality and safety.  They may harm the consuming public.  Thus, the extent of loss of consumer goodwill and reputation that Plaintiffs could suffer from the sale of counterfeit product is largely unquantifiable.

Second, the threatened injury to the Plaintiffs far outweighs the harm caused to the Defendants by the injunction.  Producing and selling counterfeit goods is illegal.  There can be no cognizable harm to the Defendants by the issuance of an order requiring them not to break the law.  While the harm to Plaintiffs, and the consuming public, by Defendants' continued illegal activity will be great.

Third, the injunction is not adverse to the public interest.  In fact, the injunction will discourage the sale of counterfeit goods, which is in the public interest.

Finally, the Plaintiffs have shown that they are likely to prevail on the merits of their

[Proposed] Memorandum Decision And Order Granting Plaintiffs' Motion For Emergency Relief,
Temporary Restraining Order, And Preliminary Injunction

Page **6** of **9**

Lanham Act claims, false advertising, and other claims. The Defendants' actions are likely to cause confusion, deceive consumers, or result in mistake.  Further, Defendants have misappropriated the Plaintiffs' trademarks, and the Plaintiffs have shown that they are likely to prevail on their claim that the Defendants are selling counterfeit goods.

B. <u>THE PLAINTIFFS ARE ENTITLED TO AN ORDER FREEZING THE DEFENDANTS' ASSETS</u>

This "[C]ourt has the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies." <u>Reebok Intl', Ltd v. Marnatech Enterprises, Inc.</u>, 970 F.2d 552, (9th Cir. 1992).  "A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." <u>Levi Strauss & Co. v. Sunrise Intl' Trading Inc.</u>, 51 F.3d 982, 987 (11th Cir. 1995) (emphasis added); see <u>Federal Trade Commission v. United States Oil and Gas Corp.</u>, 748 F.2d 1431, 1433-34 (11th Cir. 1984).  Because, "'it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement,' . . . district courts must implement fully the requirement of 15 U.S.C. § 1117(a) that 'when a violation of any right of the registrant of a mark registered in the Patent and Trademark Office … shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled … subject to the provisions of equity, to recover (1) defendant's profits….'"  <u>Reebok Intl', Ltd</u>, 970 F.2d at 559.

The Plaintiffs have shown how extensive the Defendants' counterfeiting scheme is and to which lengths they have gone to conceal their activities from Plaintiffs.  Plaintiffs have shown that Defendants have sold counterfeit imitations of Plaintiffs products to at least 1400 individuals and entities and have received at least $548,253.99 for those counterfeit products.  Defendants have used multiple aliases to conceal their identities from Plaintiffs.  On July 24, 25, and 26, 2008, (after his arrest), Suhile Tahini sent text messages to an alleged co-conspirator requesting that he pay him for counterfeit imitations of Plaintiffs' products that the co-conspirator had shipped, but for which he has not been paid.  Suhile also asked for tubes for making counterfeit imitations of Plaintiffs' products.  Suhile also told his co-conspirator that he would not stop selling counterfeit imitations of Plaintiffs' products unless forced to do so.  And, as of August 7, 2008, Defendant Suhile Tahini was still contacting his co-conspirator, requesting money that Suhile claims he owes him for counterfeit sales of Plaintiffs' products.

Thus, the Court is justified in freezing Defendants' assets not only to protect them for possible future attachment, but also to deprive Defendants of capital to continue their counterfeiting operations.  Defendants have made it clear by their actions that they will not respect an order of this Court enjoining them from selling the counterfeit goods.  The only hope of stopping the Defendants is freezing all of their assets pending final resolution of this case.

Therefore, because of the gravity of the Defendants' continued counterfeiting desires and the extreme risk that the Defendants will dissipate the assets they obtained through the sales of counterfeit imitations of Plaintiffs' products, the Court is ordering that Defendants' assets be frozen to assure the availability of permanent relief.

[Proposed] Memorandum Decision And Order Granting Plaintiffs' Motion For Emergency Relief, Temporary Restraining Order, And Preliminary Injunction

Page **7** of **9**

For the foregoing reasons, the Court finds that Plaintiffs' right to a temporary restraining order and preliminary injunction is clear and unequivocal.

It is hereby ORDERED that Plaintiffs' Motion for Emergency Relief, Temporary Restraining Order, and Preliminary Injunction is GRANTED.

It is ORDERED that each of Defendants' bank accounts, brokerage accounts, and any other assets discovered by Plaintiffs, will be temporarily frozen until further order of the Court. This Order applies to all accounts held by Defendants effective August 14, 2008, including, but not limited to:

1. **TCF BANK**
   a. Suhile Tahini:  Account Nos. 3867468333 and 7876516116.
2. **STANDARD CHARTERED BANK**
   a. Suhile Tahini/Tarik Suhile Tahini:  Account No. 0002621682.
   b. Suhile Tahini:  Account No. 10160963 and 4567-2407-0095-7763.

Defendants will have access to their funds for legitimate needs including (1) personal needs; (2) legitimate business expenses; and (3) attorney fees.  Defendants will submit requests for funds to Plaintiffs for approval.  If there is disagreement, Defendants may make a motion to the Court requesting access to their funds.

It is further ORDERED that Defendants are hereby preliminarily enjoined and ordered, until further order of the Court, as follows:

1. Defendants and each of their agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert therewith, are enjoined from purchasing, offering for sale, distributing, selling, and/or otherwise disposing of any of Plaintiffs' products in their possession, custody or control.  They are prohibited and enjoined from directly or indirectly using any registered service marks and trademarks of any product distributed by Basic Research, LLC, including but not limited to StriVectin-SD, StriVectin, Idebenol, and Hylexin, and they are further prohibited and enjoined from directly or indirectly using all similar marks or names that are likely to cause confusion among the public as to the source, origin, sponsorship or affiliation of any goods or services marketed or distributed by Basic Research.

2. Defendants and each of their agents employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with the Defendants are prohibited and enjoined from using all signs, structures or forms of advertising and promotion indicative of StriVectin-SD, StriVectin Eye Cream, Hylexin, and Idebenol, or any other product distributed by Basic Research, LLC and its business or products, or its marks and name, and from using all similar signs, structures or forms of advertising and promotion that are likely to cause confusion among the public as to the source, origin, sponsorship or affiliation of any goods or services offered by Defendants.

3. Defendants and each of their agents employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with the Defendants are hereby directed and ordered to take immediate, affirmative steps to stop, cancel or discontinue any previously obtained or purchased goods, and all advertising or services related to goods which refer to, indicate or use the Plaintiffs' registered marks, including, but not limited to the StriVectin-SD, StriVectin, Hylexin, and Idebenol names, or any similar marks or names that are likely to cause confusion among the public as to the source, origin, sponsorship or affiliation of any goods or services offered by the Defendants.

SO ORDERED.

[Proposed] Memorandum Decision And Order Granting Plaintiffs' Motion For Emergency Relief, Temporary Restraining Order, And Preliminary Injunction

Page **8** of **9**

DATED this 15th day of August, 2008.

BY THE COURT:

_____
Honorable Dee Benson
United States District Judge

Case 2:07-cv-00521-DB   Document 72   Filed 08/15/08   Page 9 of 9

[Proposed] Memorandum Decision And Order Granting Plaintiffs' Motion For Emergency Relief,
Temporary Restraining Order, And Preliminary Injunction

Page **9** of **9**